# Exhibit 2

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered this __ day of May 2014 by and between Maritime Asset Management, LLC ("Maritime") and Andrew L. Evans, on the one hand, and NeurogesX, Inc. ("NeurogesX"), and Jeffrey K. Tobias, M.D., on the other hand. Maritime, Mr. Evans, NeurogesX, and Dr. Tobias are referred to collectively as the "Parties."

## RECITALS

**WHEREAS**, on April 23, 2012, Maritime filed a lawsuit against NeurogesX, Anthony A. DiTonno, Stephen F. Ghiglieri, and Dr. Tobias on behalf of itself and proposed class of investors in NeurogesX's stock asserting violations of the federal securities laws and various state laws;

**WHEREAS**, Maritime's lawsuit was transferred to the Northern District of California where it is pending as *Maritime Asset Management, LLC v. NeurogesX, Inc. et al.*, Case No. CV 12-05034-YGR ("Lawsuit");

**WHEREAS**, the parties to the Lawsuit have entered into a settlement on behalf of the proposed class that is subject to Court approval and that is embodied in a Stipulation of Settlement dated May 16, 2014 ("Class Settlement Agreement");

**WHEREAS**, in addition to class claims, Maritime also asserted in the Lawsuit several individual claims arising from representations that NeurogesX and Dr. Tobias allegedly made during telephone conversations directly with Mr. Evans. Maritime's individual claims include a claim against NeurogesX for breach of contract and a claim against Dr. Tobias for fraud in the inducement;

**WHEREAS**, NeurogesX and Dr. Tobias deny Maritime's allegations and deny any liability on Maritime's individual claims, and believe they have meritorious defenses to those claims;

**WHEREAS**, the Parties have agreed to enter into this Agreement to avoid the expense, inconvenience, and distraction of burdensome and protracted litigation between them through a settlement, and thereby to put to rest this controversy with respect to each other on a global basis;

**NOW, THEREFORE**, in consideration of the promises and covenants contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

## TERMS

1. <u>Maritime Releasees</u>. "Maritime Releasees" means Maritime and its current and former officers, directors, and employees and Andrew L. Evans and his spouse and family members.

2. <u>Maritime Releasors</u>. "Maritime Releasors" means Maritime and Andrew L. Evans on their own behalf and on behalf of their spouses, family members, trusts, trustees, heirs, beneficiaries, predecessors, successors, assigns, employees, agents, affiliates, assignees, shareholders, directors, managers, members, partners, officers, parent companies, and subsidiaries.

3. <u>NeurogesX Releasees</u>. "NeurogesX Releasees" means each of NeurogesX, Anthony DiTonno, Stephen Ghiglieri, and Jeffrey Tobias, M.D., and each of their respective spouses, family members, trusts, trustees, heirs, beneficiaries, predecessors, successors, assigns, employees, agents, affiliates, assignees, shareholders, directors, managers, members, partners, officers, parent companies, and subsidiaries.

4. <u>NeurogesX Releasors</u>. "NeurogesX Releasors" means NeurogesX, Inc., on behalf of itself and its current and former officers, directors, and employees (including, but not limited to, Anthony DiTonno and Stephen Ghiglieri), and Jeffrey Tobias, M.D., on behalf of himself and his spouse and family members.

5. <u>Releasing Parties</u>. "Releasing Parties" means the Maritime Releasors with respect to the Maritime Released Claims and the NeurogesX Releasors with respect to the NeurogesX Released Claims.

6. <u>Released Parties</u>. "Released Parties" means the NeurogesX Releasees with respect to the Maritime Released Claims and the Maritime Releasees with respect to the NeurogesX Released Claims.

7. <u>Released Claims</u>. "Released Claims" means the Maritime Released Claims as defined in paragraph 10 and the NeurogesX Released Claims as defined in paragraph 11.

8. <u>Conditions for Effectiveness of Agreement</u>. The effectiveness of this Agreement is conditioned on the occurrence of all of the events required for the occurrence of the Effective Date as defined in the Class Settlement Agreement. If the Effective Date occurs, then this Agreement shall also be binding and effective. If the Class Settlement Agreement is terminated in accordance with paragraph 15 of the Class Settlement Agreement or if the Effective Date does not occur for any other reason, this Agreement shall be null and void and shall have no further force or effect, and the existence and terms of this Agreement (and any related negotiations or acts) shall not be used in any proceeding for any purpose.

9. <u>Settlement Payment</u>. NeurogesX shall cause Two Hundred Fifty Thousand United States Dollars ($250,000) to be paid, on behalf of itself and Dr. Tobias, to Maritime by check within fifteen (15) days of the Effective Date.

10. <u>Release of Claims Against NeurogesX Releasees</u>. As of receipt by Maritime of the settlement payment, the Maritime Releasors completely and irrevocably release, acquit, and forever discharge the NeurogesX Releasees from any and all manner of claims, demands, judgments, actions, suits, and causes of action, damages whenever and however incurred, liabilities of any kind, including costs or losses of any kind or nature, expenses, penalties and

attorneys' fees, known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, whether in law, in equity, or otherwise, that the Maritime Releasors ever had, now have, or hereafter may have, by reason of any matter, cause, or thing occurring from the beginning of time until the date of this Agreement (the "Maritime Released Claims"). Notwithstanding the foregoing, the Maritime Released Claims do not include claims relating to the enforcement of this Agreement or the enforcement of the Class Settlement Agreement.

11. <u>Release of Claims Against Maritime Releasees</u>. As of receipt by Maritime of the settlement payment, the NeurogesX Releasors completely and irrevocably release, acquit, and forever discharge Maritime Releasees from any and all manner of claims, demands, judgments, actions, suits, and causes of action, damages whenever and however incurred, liabilities of any kind, including costs or losses of any kind or nature, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, whether in law, in equity, or otherwise, that the NeurogesX Releasors ever had, now have, or hereafter may have, arising from or relating to the Lawsuit or Maritime's investment in NeurogesX securities. (the "NeurogesX Released Claims"). Notwithstanding the foregoing, the NeurogesX Released Claims do not include claims relating to the enforcement of this Agreement or the enforcement of the Class Settlement Agreement.

12. <u>Release of Known and Unknown Claims</u>. The Releasing Parties acknowledge that they have been advised by their attorneys of the contents and effect of Section 1542 of the California Civil Code and hereby expressly waive any and all provisions, rights, and benefits conferred by Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO ANY CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

The Releasing Parties also expressly waive any and all rights and benefits conferred by any equivalent, similar, or comparable present or future law or principle of law in any jurisdiction or any law or principle of law in any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above. The Releasing Parties, and each of them, may hereafter discover facts other than or different from those which they know or believe to be true with respect to the subject matter of the Released Claims, but the Releasing Parties hereby expressly waive and fully, finally, and forever settle and release the Released Claims, without regard to the subsequent discovery or existence of such additional or different facts. The foregoing release of unknown, unanticipated, unsuspected, and unaccrued losses or claims with respect to the Released Claims is contractual and intentional, and not a mere recital.

13. <u>Covenant Not to Sue</u>. Upon receipt of the Settlement Payment, the Releasing Parties covenant and agree not to initiate, prosecute, or maintain any suit or action, or assert any claim, against any of the Released Parties based in whole or in part on the Released Claims.

14. <u>No Assignment</u>. By entering into this Agreement, Maritime and Mr. Evans represent and warrant, on behalf of themselves and all Maritime Releasors, that they have not

assigned, hypothecated, conveyed, transferred, or otherwise granted or given any interest in the Maritime Released Claims, or any of them, to any other Person.

15. Attorneys' Fees and Costs. The Maritime Releasors and the NeurogesX Releasees shall each bear their own costs and attorneys' fees in connection with the Released Claims and the negotiation of this Agreement.

16. Entire Agreement. This Agreement constitutes the entire agreement among the Parties with respect to Maritime's individual claims against NeurogesX and Dr. Tobias. No representations, warranties, or inducements have been made by or to any Party concerning this Agreement or the Releasing Parties' release of the Released Claims other than those contained and memorialized in this Agreement.

17. No Admission. The Parties acknowledge that this Agreement constitutes a compromise and settlement of a dispute by the Parties, and that the consideration referred to herein shall not be construed as an admission or concession of liability, wrongdoing, or any fact.

18. Amendment. This Agreement may be modified or amended only by an agreement in writing executed by all Parties.

19. Interpretation and Construction. Counsel for all Parties have reviewed and participated in the drafting of this Agreement. Consequently, this Agreement shall be construed as if all Parties jointly prepared the Agreement, shall not be construed presumptively against any of the Parties, and none of the Parties (or any of the Maritime Releasors or the NeurogesX Releasees) will be deemed to be the drafter of this Agreement.

20. Authority. Each person executing this Agreement on behalf of a Party represents and warrants that he or she has received all necessary power and authority to do so.

21. Voluntary Agreement. The Parties represent that they have read this Agreement, understand it, voluntarily agree to its terms, and sign it freely after consulting with legal counsel of their own choosing or deciding that they do not need to consult with their own independent counsel.

22. Governing Law. This Agreement shall be deemed to have been executed and delivered in the State of California and shall be construed and enforced in accordance with, and governed by, the laws of the State of California without regard to any choice of law or conflict of laws rule or provision.

23. Counterparts. This Agreement may be executed in counterparts and exchanged by facsimile or emailed pdf, and when each Party has signed and delivered (including without limitation by facsimile or emailed pdf) at least one such counterpart, each counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one Agreement which shall be binding upon and effective in accordance with its terms as to all Parties.

5

IN WITNESS WHEREOF, the Parties hereto, through their duly authorized representatives, have fully executed this Agreement as of the Agreement Date set forth above.

MARITIME ASSET MANAGEMENT, LLC

By: _____
Title: _____
Date: _____


ANDREW L. EVANS

By: _____
Date: _____


NEUROGESX, INC.

By: _____
Title: _____
Date: _____


JEFFREY K. TOBIAS, M.D.

By: _____
Date: _____