1

2
Mark Punzalan (State Bar No. 247599)
PUNZALAN LAW, P.C.
3
600 Allerton Street, Suite 201
Redwood City, CA 94063
4
Tel: (650) 362-4150
Fax: (650) 362-4151
5
Email: markp@punzalanlaw.com

6
Nicholas I. Porritt (admitted *pro hac vice*)
7
LEVI & KORSINSKY LLP
1101 30th Street NW, Suite 115
8
Washington, DC 20007
Tel: (202) 524-4290
9
Fax: (202) 337-1567
Email: nporritt@zlk.com
10

11
*Counsel for Lead Plaintiff Maritime Asset
Management, LLC*
12

13                UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                     OAKLAND DIVISION

16
MARITIME ASSET MANAGEMENT,
LLC, On Behalf of Itself and All Others           No. 4:12-cv-05034-YGR
17
Similarly Situated,
                                                  **NOTICE OF UNOPPOSED MOTION**
18              Plaintiffs,                        **AND UNOPPOSED MOTION OF LEAD**
                                                  **PLAINTIFF FOR AN ORDER**
19         v.                                     **GRANTING FINAL APPRVOAL OF**
                                                  **CLASS ACTION SETTLEMENT;**
20
NEUROGESX, INC., ANTHONY A.                       **MEMORANDUM OF POINTS AND**
DITONNO, STEPHEN F. GHIGLIERI, and                **AUTHORITIES IN SUPPORT**
21
JEFFREY K. TOBIAS, M.D.,                          **THEREOF**

22              Defendants.                        Date:    September 2, 2014
                                                  Time:    2:00 p.m.
23                                                Room:    Courtroom 1, 4th Floor
                                                  Judge:   Hon. Yvonne Gonzalez Rogers
24

25

26

27

28
                    MOTION & MPA ISO ATTORNEYS´ FEES
                        Case No. 4:12-cv-05034-YGR

1

**NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION**

2      PLEASE TAKE NOTICE that, pursuant to an Order of the Court issued on June 27,

3  2014 ("Notice Order"), on September 2, 2014 at 2:00 p.m., or as soon thereafter as counsel

4  may be heard, at the United States Court, Northern District of California, Courtroom 1, 4th

5  Floor, 1301 Clay Street, Oakland, California 94612, before the Honorable Yvonne Gonzalez

6  Rogers, Lead Plaintiff Maritime Asset Management, LLC ("Lead Plaintiff") will move for an

7  order approving the settlement of this action and dismissing it with prejudice.

8      This motion is supported by the Declaration of Sarah Myers-Mutschall in Support of

9  Lead Plaintiff's Motion and supporting exhibits ("Myers-Mutschall Decl."), filed with the

10  Court on August 1, 2014, Dkt. No. 101, as well as a supplemental declaration by Sarah

11  Myers-Mutschall submitted herewith.

12

**STATEMENT OF ISSUES TO BE DECIDED**

13      1.      Whether the notice of settlement complied with Fed. R. Civ. P. 23 and due

14  process.

15      2.      Whether the Plan of Allocation should be approved as fair and reasonable.

16      3.      Whether the settlement is fair, reasonable and adequate.

17      4.      Whether the Court should approve Lead Counsel's Fees and Expenses.

18

19

20

21

22

23

24

25

26

27

28

MOTION & MPA ISO FINAL APPROVAL
Case No. 4:12-cv-05034-YGR

1

## **TABLE OF CONTENTS**

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.......................................................................1

I.      INTRODUCTION ......................................................................................................................1

II.     BACKGROUND .......................................................................................................................2

          A.     Facts ................................................................................................................2

          B.     Procedural History .........................................................................................2

          C.     Settlement Negotiations...................................................................................3

III.    THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED WITH FED. R. CIV. P. 23(e) ..............................................................................................................4

          A.     The Dissemination Plan Satisfies Due Process .............................................5

          B.     The Contents of the Notice Satisfy Due Process.............................................5

IV.    FINAL CERTIFICATION OF THE CLASS SHOULD BE GRANTED ...............................6

          A.     The Settlement Class Meets the Requirements of Rule 23(a)..........................6

          B.     The Settlement Class Meets the Requirements of Rule 23(b)(3) ....................8

V.     THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED ......................................................................8

VI.    THE SETTLEMENT IS FAIR ................................................................................................9

          A.     The Settlement Meets the Standard for Judicial Approval of Class Action Settlements ....................................................................................................9

                 1.     The Stage of Proceedings Weighs in Favor of Settlement ..................... 11

                2.     The Risks of Continued Litigation Weigh Heavily in Favor of Settlement ............................................................................................ 12

                        a.     Risks of proving scienter ............................................................ 13

                        b.     Risks of proving reliance............................................................ 13

                        c.     Falsity of Defendant Tobias´s statements when made ............... 14

          B.     The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief ............................................................................................................ 14

          C.     The Recommendation of Experienced Counsel Favors Settlement ............... 16

          D.     Reaction of the Class Supports Approval of the Settlement .......................... 17

iii

VII.   COUNSEL´S ATTORNEYS´ FEES AND LITIGATION EXPENSES SHOULD BE
APPROVED ...................................................................................................... 17
VIII.   CONCLUSION ................................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

1

## <u>TABLE OF AUTHORITIES</u>

2

3                                          Cases

*Amchem Prods. v. Windsor*,
4      521 U.S. 591 (1997) ........................................................................................ 8

5

*Boyd v. Bechtel Corp.*,
6      485 F. Supp. 610 (N.D. Cal. 1979) ............................................................. 10, 11

7

*Churchill Village, L.L.C. v. General Electric*,
8      361 F.3d 566 (9th Cir. 2004) .......................................................................... 5

9

*Eisen v. Carlisle & Jacquelin*,
10     417 U.S. 156 (1974) ........................................................................................ 5

11

*Ellis v. Naval Air Rework Facility*,
12     87 F.R.D. 15 (N.D. Cal. 1980) ....................................................................... 11

13

*Franks v. Kroger Co.*,
14     649 F.2d 1216 (6th Cir. 1981) ........................................................................ 5

15

*Hanlon v. Chrysler Corp.*,
16     150 F.3d 1011 (9th Cir. 1998) ........................................................................ 6

17

*Hughes v. Microsoft Corp.*,
18     Case No. C98-1646C, 2001 WL 34089697 (W.D. Wash. Mar. 21, 2001) ......... 10

19

*In re Cardizem CD Antitrust Litig.*,
20     218 F.R.D. 508 (E.D. Mich. 2003) ................................................................. 11

21

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
22     142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................... 9

23

*In re Indep. Energy Holdings PLC*,
24     00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ............... 11

25

26

27
                                          v
28

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) .................................................................. 11, 12, 15

*In re Mfrs. Life Ins. Co. Premium Litig.*,
 MDL 1109, 1998 WL 1993385 (S.D. Cal. Dec. 21, 1998) ................................ 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
 94 Civ. 3996 (RWS), 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ........................ 8

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 8, 12

*In re Oracle Sec. Litig.*,
 No. C-90-0931 VRW, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994) ................ 8, 9

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ...................................................................... 11, 16

*Marshall v. Holiday Magic*,
 550 F.2d 1173 (9th Cir. 1977) ............................................................................ 5

*McPhail v. First Command Fin. Planning, Inc.*,
 No. 05-171-IEG, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .......................... 10

*Mendoza v. Tucson School Dist. No. 1*,
 623 F.2d 1338 (9th Cir. 1980), cert. denied, 450 U.S. 912 (1981) ..................... 5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 12, 16

*Nobles v. MBNA Corp.*,
 No. C-06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ................. 12

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,
 688 F.2d 615 (9th Cir. 1982) ............................................................. 8, 9, 10, 16

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ............................................................................ 10

1

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................. 5, 9, 10

2

3

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ................................................................. 9

4

5

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................. 9

6

7

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ................................................................. 4

8

9

*White v. NFL*,
    822 F. Supp. 1389 (D. Minn. 1993) ................................................................. 9

10

11

Other Authorities

12

13

4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.53 ........................ 4

14

15

RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2013 FULL-YEAR REVIEW ........... 7

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION & MPA ISO FINAL APPROVAL
Case No. 4:12-cv-05034-YGR

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff

4    Maritime Asset Management, LLC ("Lead Plaintiff" or "Maritime") respectfully requests that

5    this Court grant final approval of the proposed settlement (the "Settlement") reached in this

6    action ("Action") between Lead Plaintiff, on behalf of the Class, and Defendants NeugogesX

7    Inc. ("NeurogesX," or "the Company"), Anthony A. DiTonno, Stephen Ghiglieri, and Dr.

8    Jeffrey Tobias (collectively "Defendants").

9    After extensive settlement negotiations, Lead Plaintiff and Defendants entered into a

10   stipulation setting forth the terms of the settlement of the claims asserted in the Action (the

11   "Stipulation of Settlement" or "Settlement"). Under the terms of the Settlement, a settlement

12   fund was created for the benefit of the class which consisted of $1.25 million in cash (the

13   "Settlement Fund"). Additionally, Maritime and Defendants agreed to a separate settlement of

14   Maritime´s individual claims for $250,000.

15   On June 27, 2014, the Court signed an Order Preliminarily Approving Settlement

16   Certifying Settlement Class, Approving Class Notice, and Setting Settlement Hearing (the

17   "Order"). The Court set a hearing date for final approval on September 2, 2014. Pursuant to

18   the Order, copies of the notice were mailed to all the Class Members and shareholders of

19   record who form the Settlement Class.

20   As discussed more fully below, this Settlement, which provides for a meaningful

21   recovery in the face of extraordinary risks of litigation, is fair, reasonable, adequate, and

22   meets all of the relevant criteria for approval. Moreover, the fairness and adequacy of the

23   Settlement is evidenced by the fact that in response to the mailing of the notice to each Class

24   member detailing the terms of the Settlement, no objection has been received by Lead

25   Plaintiff's counsel. Having no objection to the Settlement is very significant since the class

26   members are all sophisticated financial institutions which have counsel available to advise,

27   represent and assist them in expressing opposition to the request made herein if they so

28

1

choose. Accordingly, Lead Plaintiff respectfully submits that the settlement should be approved by this Court, Final Judgment entered in the form attached hereto as Exhibit A, and that the Court award Lead Plaintiff´s attorneys´ fees and expenses in the form attached hereto as Exhibit B.[1]

## II.   BACKGROUND

### A.   Facts

Maritime brings this action on behalf of all persons who purchased or otherwise acquired NeurogesX securities on or around July 21, 2011 pursuant to a private placement pursuant to a Securities Purchase Agreement (the "SPA") against NeurogesX and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a, *et seq.*  Lead Plaintiff´s Second Amended Class Action Complaint (the "Complaint") alleges that the Defendants made misrepresentations or omitted material information concerning the continued employment of Defendant Jeffrey K. Tobias, the Company's former Chief Medical Officer and Executive Vice President of Research and Development. When the Company disclosed that Defendant Tobias would be leaving the Company, the shares abruptly declined in value by almost 40%.

### B.   Procedural History

Maritime initially filed suit in the United States District Court for the Southern District of New York on April 23, 2012 on behalf of a class of all purchasers of NeurogesX stock from May 9, 2011 to September 27, 2011 and a private placement class of all persons who purchased or otherwise acquired NeurogesX securities on July 21, 2011 pursuant to a share purchase agreement. Following the appointment of Maritime as lead plaintiff, the action was transferred to the United States District Court for the Northern District of California.

---

[1]     The proposed Order Granting Lead Plaintiff´s Motion for Attorney´s Fees and Reimbursement of Expenses was attached as an exhibit to the declaration of Mark Punzalan in support thereof, filed on July 22, 2014. Dkt. No. 98-1.

MOTION & MPA ISO FINAL APPROVAL
Case No. 4:12-cv-05034-YGR

On October 31, 2012, Plaintiff filed the first amended complaint, which asserted six counts. The Court granted the defendants' subsequent motion to dismiss, but gave Plaintiff leave to amend the four of the counts.

The second amended complaint, filed on October 29, 2013, asserted counts of fraudulent inducement and breach of contract on behalf of Maritime individually and Exchange Act violations on behalf of the private placement class. The defendants again moved to dismiss. The motion was fully-briefed and scheduled for a hearing on March 25, 2014.

### C.    Settlement Negotiations

On March 18, 2014, the parties participated in a mediation before the Honorable Edward Infante. The mediation took place at the offices of JAMS in San Francisco, California, At all times, the parties' negotiations were at arm's length and in good faith. After separate mediator's proposals were made on the proposed class settlement and Maritime's individual claims, the parties were able to reach agreements in principle to settle all claims.

The settlement created a Settlement Fund of $1.25 million on behalf of the Settlement Class. This represents an extremely good recovery for the Settlement Class. The damages analysis on behalf of the Settlement Class suggested that liability would likely limited to approximately $3 million, making the $1.25 million Settlement Fund a recovery of over 40% of any potential damages. Given the risks of litigation and the fact that the Court had already dismissed Lead Plaintiff's initial complaint, this recovery is a substantial benefit for the Settlement Class.

Separately, the parties negotiated the settlement of Maritime's individual claims. Judge Infante presented a proposal to settle Maritime's individual claims for $250,000 in exchange for a general release of all Maritime's claims, a proposal which was accepted by Maritime and Defendants.

After reaching an agreement in principle regarding the relief to the Settlement Class and settlement of Maritime's individual claims, the parties began preparing the settlement

1  documents, including the stipulation of settlement, notice, the claim form, and the proposed

2  orders granting final approval and entering final judgment. Over the next several weeks, the

3  parties exchanged drafts of the settlement documents. The parties finalized and executed the

4  Stipulation of Settlement on May 16, 2014.

5      On March 19, 2014, Defendants filed a Notice of Tentative Settlement and Request to

6  Take Motions Off Calendar, notifying the Court that a tentative settlement had been reached

7  between the parties, as a result of the settlement negotiations as described below. On March

8  20, 2014, the Court filed an Order Vacating Dates Setting Compliance Date in Light of Notice

9  of Settlement, moving all pending motion, case management and trial dates off calendar.

10     Following submission by the parties of the documents in support of preliminary

11  approval of the settlement, on June 24, 2014, the Court held a hearing to preliminarily

12  approve the settlement. On June 27, 2014, the Court issued an order preliminarily approving

13  the settlement. Dkt. No. 94. On July 22, 2014, Lead Plaintiff submitted a motion, declarations

14  and attached exhibits in support of an award of attorneys´ fees and reimbursement of

15  expenses, Dkt Nos. 98-100, and a declaration in further support of final approval on August 1,

16  2014. Dkt. No. 101.

17  **III.    THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED**

18          **WITH FED. R. CIV. P. 23(e)**

19     Due process requires that the class members be given notice of a proposed settlement

20  and their right to be heard at the fairness hearing. There are no rigid rules to determine

21  whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements.

22  Rather, to satisfy due process and comply with Fed. R. Civ. P. 23(e), the settlement notice

23  merely must "fairly apprise prospective members of the class of the terms of the proposed

24  settlement and of the options that are open to them in connection with the proceedings."

25  *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (internal quotation marks and

26  brackets omitted). Notice is "adequate if it may be understood by the average class member."

27  4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.53 at 167.

28

**A.    The Dissemination Plan Satisfies Due Process**

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notices must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981). Here, there is clear, defined class, and there is no question that the notice was disseminated via individual certified mail to all members of the settlement class. This notice easily satisfies the due process requirement.

**B.    The Contents of the Notice Satisfy Due Process**

This circuit requires a very general description of the proposed settlement in a notice. *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993); *Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980), cert. denied, 450 U.S. 912 (1981).

Proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the settlement; (5) and explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall v. Holiday Magic*, 550 F.2d 1173, 1178 (9th Cir. 1977).

Here, the Court-approved Notice provided all of the required information: a description of the monetary relief and the Plan of Allocation; lead counsel's intent to apply for a fee award in an amount not to $312,500 (25% of the Settlement Fund) for settlement of the class claims and for reimbursement of expenses; and the contact information for lead counsel, including how to make inquiries. The notice also included the date, time, and place of the fairness hearing, described how to object, and informed class members that any objection

1   must be filed with the Court and delivered to lead counsel no later than August 5, 2014.

2   Furthermore, the Court-approved notice adequately informed class members of the impact of

3   the settlement, including release of claims against Defendants for any class members who do

4   not opt out.

5          As of August 12, 2014, Lead Counsel has received 12 claim forms completed and

6   signed by members of the class, representing approximately 80% of the claims against the

7   settlement fund, and has not received any objections to the settlement. Dkt. No. 101, Myers-

8   Mutschall Decl. ¶¶ 10-11; *see also* Myers-Mutschall Supplemental Declaration ¶ 4.

9   In sum, broad dissemination of the Court-approved notice satisfied every conceivable

10  requirement of due process. Accordingly, the settlement should be granted final approval.

11  **IV.    FINAL CERTIFICATION OF THE CLASS SHOULD BE GRANTED**

12         In the Court's Order dated June 27, 2014, the Court certified the settlement class

13  "consisting of all Persons who purchased or otherwise acquired NeurogesX Securities

14  pursuant to the July 21, 2011 Private Placement (the "Settlement Class"). Dkt. No. 94 ¶ 2. As

15  described in detail in Lead Plaintiff's memorandum in support of preliminary approval of the

16  settlement, Dkt. No. 84 at 11-18, settlement under Rule 23 of the Federal Rules of Civil

17  Procedure is appropriate.

18                 **A.    The Settlement Class Meets the Requirements of Rule 23(a)**

19         In order for a class to be certified, it must meet the following requirements: (a)

20  numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation. *Hanlon v.*

21  *Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). As detailed in Lead Plaintiff's memorandum

22  in support of preliminary approval, the Settlement Class meets all the requirements of Rule

23  23(a).

24         First, as to numerosity, the class is sufficiently numerous, and the Settlement Class is

25  comprised entirely of sophisticated, accredited investors. Given that the relative losses of

26  some members are significantly smaller than others, judicial economy is served by allowing

27

28

MOTION & MPA ISO FINAL APPROVAL
Case No. 4:12-cv-05034-YGR

1   the Settlement Class to participate in the Settlement rather than pursue their own lawsuits or

2   receive no recovery at all.

3          Second, all of the conduct alleged in the complaint was common to all members of the

4   Settlement Class. All of the Settlement Class members purchased in the same private

5   placement. Therefore, all the Defendants´ alleged misrepresentations and omissions were

6   made to each of the Settlement Class members.

7          Third, all of the Settlement Class members´ claims are interrelated and, Lead

8   Plaintiff´s claims are typical of those of the rest of the class. All Settlement Class members

9   suffered losses by virtue of the corrective disclosures. Maritime´s individual settlement does

10  not create a conflict with the other class members either, by virtue of the fact that the

11  Settlement will recover 42% of the total losses available to the class, an amount significantly

12  higher than other securities class action settlements. *See* RECENT TRENDS IN SECURITIES

13  CLASS ACTION LITIGATION: 2013 FULL-YEAR REVIEW, p. 32 (displaying a graph showing that

14  median of settlement value as a percentage of investor losses for all federal securities class

15  actions from 1996 to 2013 is 17.1%).

16         Fourth, Maritime is an adequate representative of the Settlement Class. Maritime has

17  no conflicts with the other class members, and has retained counsel with vast experience in

18  the defense and prosecution of securities class actions. Maritime´s representative has been

19  actively involved in the case from its inception, maintaining communication with Lead

20  Counsel and attending the mediation which lead to the settlement of this matter. Again,

21  Maritime´s individual settlement does not create a conflict with the other members of the

22  class. At the mediation, Judge Infante structured the mediation process such that an agreement

23  on the class claims were agreed upon before any discussion ensued concerning resolution of

24  the individual claims. The individual claims were all claims that may not be alleged on a

25  class-wide basis, and only affected Maritime. Due to Maritime´s diligence and retention of

26  experienced counsel, its representation is adequate.

27

28

7

MOTION & MPA ISO FINAL APPROVAL

Case No. 4:12-cv-05034-YGR

1

**B.       The Settlement Class Meets the Requirements of Rule 23(b)(3)**

2       Rule 23(b)(3) authorizes class certification where, in addition to the requirements of

3   Rule 23(a), common questions of law or fact predominate over any individual question and a

4   class action is superior to other available means of adjudication. *See Amchem Prods. v.*

5   *Windsor*, 521 U.S. 591, 607 (1997). This standard, as in most securities class actions, is easily

6   met here. The root of the class action—whether Defendants´ publicly disseminated releases

7   and statements omitted and/or misrepresented material facts—is the central issue and

8   predominates over any theoretical individual issue that may arise. Additionally, the class

9   action mechanism is the best method of resolving this suit. Since the controversy for each

10   class member is identical, adjudicating in one suit and one forum is the most economical

11   means of resolving this matter. Moreover, some of the class members´ damages are arguably

12   too small to make it feasible to incur substantial litigation costs that could potentially exceed

13   any potential recovery.

14   **V.      THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND**

15   **ADEQUATE AND SHOULD BE APPROVED**

16       Lead Plaintiff also requests that the Court approve the Plan of Allocation as "fair,

17   reasonable, and adequate." *Officers for Justice v. Civil Serv. Comm'n of City and County of*

18   *San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted). A "plan of allocation of

19   settlement proceeds in a class action . . . is governed by the same standards of review

20   applicable to approval of the settlement as a whole: the plan must be fair, reasonable and

21   adequate." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008)

22   (internal quotations omitted, emphasis added); *see also In re Oracle Sec. Litig.*, No. C-90-

23   0931 VRW, 1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994).

24       In making this determination, courts have given great weight in determining the

25   fairness, reasonableness and adequacy of a proposed plan of allocation to the opinion of class

26   counsel. *See In re NASDAQ Market-Makers Antitrust Litig.*, 94 Civ. 3996 (RWS), 2000 WL

27   37992, at *2 (S.D.N.Y. Jan. 18, 2000) (stating that "[a]n allocation formula need only have a

28

8

1   reasonable, rational basis, particularly if recommended by 'experienced and competent' Class

2   Counsel") (quoting *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993)) (the court

3   "affords considerable weight to the opinion of experienced and competent counsel that is

4   based on their informed understanding of the legal and factual issues involved" in approving

5   distribution of different categories of claims reflecting differences in damages).

6          Here, it is reasonable to allocate the Settlement Funds to class members based on the

7   extent of their injuries resulting from the claims alleged in this action. *See Oracle*, 1994 WL

8   502054, at *1 (citing *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596

9   (S.D.N.Y. 1992)); *see also Torrisi*, 8 F.3d at 1375-76. The Settlement Fund will be allocated

10  based on the amount invested by a Claimant in the July 21, 2011 Private Placement as a

11  proportion of the total claims received. This proposed allocation was described in the notice

12  sent to each Class member and there has been no objection. A chart showing the proposed

13  allocation based on the claims received to date is attached hereto as Exhibit B. As this

14  allocation is fair and reasonable, the Plan of Allocation should be approved.

15  **VI.      THE SETTLEMENT IS FAIR**

16          **A.      The Settlement Meets the Standard for Judicial Approval of Class
                   Action Settlements**

17          It is well established in the Ninth Circuit that "voluntary conciliation and settlement

18  are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Class

19  action suits readily lend themselves to compromise because of the difficulties of proof, the

20  uncertainties of the outcome and the typical length of the litigation. An "overriding public

21  interest" exists in settling litigation, and this is "particularly true in class action suits." *Van

22  Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project

23  v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

24          In approving a proposed class action settlement under Fed. R. Civ. P. 23(e), the Court

25  must find that the proposed settlement is "fair, reasonable, and adequate." To make this

26  determination, the Ninth Circuit instructs the lower courts to consider several factors:

27

28

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625. *Accord Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Torrisi*, 8 F.3d at 1375.

The determination of fairness falls within the "sound discretion" of the District Court. *Torrisi*, 8 F.3d at 1375-76. However, courts recognize that a strong initial presumption of fairness applies where, as here, the settlement is reached by experienced counsel after arm's length negotiations. *See McPhail v. First Command Fin. Planning, Inc.*, No. 05-171-IEG, 2009 WL 839841, at *3 (S.D. Cal. Mar. 30, 2009); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (finding that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

The Ninth Circuit has placed limits on the inquiry to be made by the Court in considering a settlement. The Court in *Officers for Justice* held that a:

> [F]airness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

688 F.2d at 625 (emphasis in original).

Here, it is the considered judgment of Lead Counsel that this Settlement provides for a fair, reasonable and adequate resolution of the litigation and thus, should be entitled to a presumption of reasonableness. *See Hughes v. Microsoft Corp.*, Case No. C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 21, 2001). This presumption of reasonableness is further strengthened because the arm's-length negotiating process involved a mediator experienced in these types of cases. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

10

1   1995) (finding mediator's involvement supports settlement approval); *see also In re Cardizem*

2   *CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (stating that involvement of

3   mediator or other third parties in settlement discussions is "further evidence of the arm's

4   length . . . nature" of the settlement); *In re Indep. Energy Holdings PLC*, 00 Civ. 6689 (SAS),

5   2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (holding that "the fact that the

6   Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a

7   private mediator experienced in complex litigation, is further proof that it is fair and

8   reasonable"). Indeed, Judge Infante has submitted an affidavit confirming his view that the

9   settlement was fair, reasonable, and adequate for the Class.  Dkt. No. 86.

10        Thus, Maritime requests that the Court find that the Settlement is "fair, reasonable,

11  and adequate," as required by Fed. R. Civ. P. 23(e). As demonstrated below, consideration of

12  several factors asserted by the Ninth Circuit weighs in favor of settlement in this case.

13        **1.      The Stage of Proceedings Weighs in Favor of Settlement**

14        Courts consider the stage of the proceedings and the amount of information available

15  to the parties to assess the strength and weaknesses of their case in determining the fairness,

16  reasonableness and adequacy of a settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

17  454, 459 (9th Cir. 2000); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.

18  1980); *Boyd*, 485 F. Supp. at 616-17. Here, the parties have engaged in sufficient pre-trial

19  proceedings to determine that this Settlement is in the best interest of the class.

20        The papers in support of preliminary approval detail Lead Plaintiff's thorough

21  investigation undertaken into the facts and law in deciding to settle the class claims. The

22  Court has already considered the substance of Lead Plaintiff's allegations once and dismissed

23  the complaint. At this stage the Lead Plaintiff has submitted a second, more-focused

24  complaint, which has been fully briefed by both parties. As a result, Lead Counsel had a

25  comprehensive and informed understanding of the strengths and weaknesses of the case and

26  had sufficient information to make an assessment of the fairness of the settlement before

27  entering into it and presenting it to the Court. *See Nat'l Rural Telecomms. Coop. v. DIRECTV,*

28

11

*Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (finding that "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair").

### 2.     The Risks of Continued Litigation Weigh Heavily in Favor of Settlement

This Settlement is also appropriate given the "inherent difficulty of prevailing in class action litigation." *Nobles v. MBNA Corp.*, No. C-06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009). To determine whether the proposed Settlement is fair, reasonable and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Class Members and the immediacy and certainty of a substantial recovery. *Mego Fin.*, 213 F.3d at 458; *In re Omnivision*, 559 F. Supp. 2d at 1046.

Although Lead Counsel believes that the case is meritorious, the risks discussed below render the outcome of lengthy litigation and trial extremely uncertain. *See In re Mfrs. Life Ins. Co. Premium Litig.*, MDL 1109, 1998 WL 1993385, at *5 (S.D. Cal. Dec. 21, 1998) (stating that "even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings"). Therefore, careful consideration of the litigation risks supports approval of the Settlement as fair, adequate and reasonable. *See Nobles*, 2009 WL 1854965, at *2 (deferring to the "reasoned judgment" of class counsel" in opting to settle, although the class might have achieved greater recovery in taking the case to trial).

In this case, the value of Settlement far outweighed the risks of continuing to litigate. Throughout this litigation, Defendants presented strong arguments questioning Plaintiff's ability to prove scienter, reliance, and the falsity of Defendant Tobias´s statements when made, at trial, even if the claims should survive a motion to dismiss. These legitimate risks, as detailed below, factored heavily into Lead Counsel's determination that this Settlement would provide the most favorable relief to Lead Plaintiff and the Class.

1

### a.     Risks of proving scienter

2      While Lead Plaintiff believes that his claims have significant merit, there would be

3  numerous risks associated with continuing this litigation which, on balance, weigh in favor of

4  settlement. First, Lead Plaintiff faced substantial risks in proving scienter. Defendants have

5  repeatedly posed the argument that Lead Plaintiff cannot prove scienter in light of the fact that

6  the Complaint contains no contemporaneous evidence that Defendant Tobias had decided to

7  leave NeurogesX before July 19, 2011. The Complaint was amended to include new

8  allegations from a confidential witness who claims was told by someone else that Tobias was

9  planning to leave. This information, however, arguably does not speak to his attempt to

10  deceive the investors in NeurogesX, and even if the Court were to deny the motion to dismiss,

11  this crucial information would be heavily challenged at trial as inadmissible hearsay.

12  Although Plaintiff believes he has strong counter-arguments to these points, there is certainly

13  substantial risk associated with this element of his claims. Of course, if Plaintiff were

14  ultimately unable to prove Defendants' scienter, Plaintiff's case would yield no recovery for

15  the Class.

16

### b.     Risks of proving reliance

17      With regard to reliance, Defendants have contended that Maritime cannot establish

18  reliance for two reasons. First, since this is a private placement, Defendants argue that the

19  fraud-on-the-market theory doesn´t apply. For this reason, Defendants argue that Lead

20  Plaintiff has to show individual reliance on behalf of every class member, i.e. that every class

21  member had a similar conversation to the one Mr. Evans of Maritime had with Defendant

22  Tobias, during which he affirmed that he would not be leaving the Company.

23      Second, because the Complaint states that Lead Plaintiff and other members of the

24  class are sophisticated investors, and that because the private placement documents stated that

25  the Securities Purchase Agreement contains the entire understanding of the parties,

26  Defendants argue that as sophisticated investors they are not entitled to rely on the oral

27  representations of Defendant Tobias. Again, Lead Plaintiff believes it has made sufficient

28

13

MOTION & MPA ISO FINAL APPROVAL
Case No. 4:12-cv-05034-YGR

1    arguments to counter these claims, but the Court has already ruled in favor of Defendants

2    once, creating uncertainty as to this issue as well.

3                        c.        **Falsity of Defendant Tobias´s statements when made**

4          Finally, Defendants argue that the Complaint does not present particularized facts that

5    show that Defendant Tobias´s statements and those contained in the Securities Purchase

6    Agreement were false when made. Essentially, Defendants argue that Complaint does not

7    show that he *planned* to leave the Company at the time the statements were made, perhaps

8    merely that he was considering or was potentially leaving.  In support, Defendants attack the

9    reliability of Lead Plaintiff´s confidential witnesses, deeming the information "at least triple

10   hearsay", and failure to present facts attesting to the confidential witnesses´ personal

11   knowledge of the events surrounding Defendant Tobias´s departure.

12         Failure to successfully argue any of these legal issues would be fatal to Maritime´s

13   claims. As the Court is aware, Maritime was previously unsuccessful, and the amended

14   Complaint contains much of the same facts as the previous complaint which was dismissed by

15   the Court. Maritime did its best to demonstrate Defendant Tobias´s state of mind at the time

16   the statements were made, but the evidence contained in the Complaint is circumstantial, and

17   even with the new information obtained by Maritime´s counsel, and although Maritime is

18   confident it successfully argued all of the above arguments, it was uncertain that Lead

19   Plaintiff would ultimately be successful.

20         **B.        The Value of an Immediate Recovery Outweighs the Mere**

21                    **Possibility of Future Relief**

22         The settlement value substantially outweighs the mere possibility of potentially larger

23   future relief, particularly when weighed against the possibility of a smaller recovery or no

24   recovery at all. In fact, the parties are in agreement that the settlement is roughly 40% of the

25   total available recovery in this case. Hence, even if the entire amount of the drop following

26

27

28
                                          14

1  Tobias´s announcement could be attributable to the announcement, total losses for the class
2  would only amount to $3 million.

3      Given the obstacles and uncertainties in this complex litigation, the Settlement of
4  $1,250,000 is a very favorable result for the Class. It achieves a significant monetary recovery
5  on behalf of the Class relative to the total amount the members would be entitled to if
6  successful at trial, and is unquestionably superior to another possibility which unmistakably
7  existed as a result of the exigencies of this litigation – little or no recovery at all for the Class.

8      The benefits to the Class of the present Settlement become more apparent when one
9  considers the costs of continued and possibly protracted litigation. *See Mego Fin.*, 213 F.3d at
10 458 (considering the "expense and possible duration of the litigation" in evaluating the
11 reasonableness of a settlement). NeurogesX no longer exists, therefore any payout in this case
12 may be limited to the amount of its insurance carrier, which may act as a cap on the amount of
13 damages obtained. The additional and substantial expenses which would be incurred if this
14 case were litigated further would be likely to reduce the net recovery to the Class. These
15 expenses may include extensive expert fees, and would certainly include substantial discovery
16 expenses and a considerable investment in trial preparation. These various costs and fees
17 would not only drain the remaining funds available for recovery from Defendants' insurance,
18 but would also increase the amount that Plaintiff's counsel would seek in remuneration of
19 litigation expenses. Moreover, delay, not just at the trial stage, but through post-trial motions
20 and the appellate process, could cause the class members to wait years for recovery, should
21 there be any, further reducing its value.

22      In sum, Plaintiff believes that the Settlement is well within a range of reasonableness
23 that can and should be approved. The Settlement represents a significant portion of any
24 recovery likely to be obtained from Defendants even if Plaintiff won a trial verdict, and was
25 agreed upon only after considerable negotiations. And, of course, this Settlement is vastly
26 superior to the potential outcome of no recovery at all. As such, the Settlement should be
27 approved.

28

1

       **C.**       **The Recommendation of Experienced Counsel Favors Settlement**

2           In assessing the adequacy of the terms of the Settlement, the trial court is entitled to

3 and should rely upon the judgment of experienced counsel for the parties. *See DIRECTV*, 221

4 F.R.D. at 528 (stating that "great weight is accorded to the recommendation of counsel, who

5 are most closely acquainted with the facts of the underlying litigation") (internal quotations

6 and citations omitted). The basis for such reliance is that "[p]arties represented by competent

7 counsel are better positioned than courts to produce a settlement that fairly reflects each

8 party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378.

9 Indeed, when evaluating the proposed settlement, the trial judge, absent fraud, collusion, or

10 the like, should be hesitant to substitute its own judgment for that of counsel. *See DIRECTV*,

11 221 F.R.D. at 528.

12           After thorough consideration, Lead Counsel concluded that the Settlement terms are

13 fair, adequate, reasonable and in the best interests of the Class as a whole, and recommend

14 that it be granted final approval. The Settlement provides an immediate and substantial cash

15 benefit to the class. Moreover, the Settlement avoids the risks of a trial relating to, among

16 other things, scienter, loss causation and the quantum and calculation of actual damages.

17 Based upon their diligent investigation of the facts and law applicable to this litigation, their

18 evaluation of the case, and their extensive experience in the prosecution of class actions, Lead

19 Counsel believes that the Settlement is a fair, adequate and reasonable resolution of the claims

20 alleged in this action. Further, Lead Counsel believes that the Settlement is preferable to

21 continued litigation and the costs and uncertainties associated therewith. Accordingly, this

22 factor weighs in favor of approval of the Settlement.

23           Likewise, the fact that Defendants are represented by well-regarded firms with vast

24 experience in defending companies and individual defendants against securities fraud

25 allegations, also weighs in favor of approving the Settlement.

26

27

28

1

**D.      Reaction of the Class Supports Approval of the Settlement**

2      The last criterion for final approval is the reaction of the Class. *See Officers for*

3  *Justice*, 688 F.2d at 625. At this time, no objections have been received by Plaintiff's

4  Counsel. The time to object to the Settlement or to exclude oneself from the Settlement

5  expired on August 5, 2014. As of the time of filing, Lead Plaintiff has not received any

6  objections and none has been filed in this proceeding. Lead Plaintiff will apprise the Court of

7  any objections or exclusions, should any exist, that are received before the Final Approval

8  Hearing on September 2, 2014.

9  **VII.    COUNSEL′S ATTORNEYS′ FEES AND LITIGATION EXPENSES SHOULD**

10  **BE APPROVED**

11      As set forth in Lead Plaintiffs′ Motion for Attorneys′ Fees and Reimbursement of

12  Expenses filed with the Court on July 22, 2014, Dkt. No. 98, Lead Plaintiff′s counsel requests

13  that the Court grant Lead Plaintiff′s attorneys′ fees for the class action settlement in the

14  amount of $312,500 (25% of the settlement fund), and reimburse Lead Plaintiff′s attorneys in

15  the amount of $16,440.82.[2] The requested expense reimbursement amount is less than the

16  $25,000 potential expenses listed in the Notice, which has not received any objections.  As set

17  forth in the fee motion, and as further detailed here, these fees and expenses should be

18  awarded to Lead Plaintiff′s counsel due to the results achieved for the class and given the

19  difficulties faced in litigating this case. For the reasons, Lead Plaintiff respectfully requests

20  that the Court approve for reimbursement of Lead Counsel′s fees and expenses.

21  **VIII.  CONCLUSION**

22      This Settlement is eminently fair in the view of skilled counsel. Further, the

23  complexity of the facts at issue, the substantial expenses if this litigation were to continue to

24  trial, and the risks attendant to prevailing on a motion to dismiss, summary judgment, trial and

25

26  _____
[2] The amount of expenses referenced here is the $16,440.82 requested in Lead Plaintiff′s

27  Motion for Attorney Fees and Reimbursement of Expenses, filed on July 22, 2014.  Dkt. No. 98.

28

17

1  subsequent appeals, weigh in favor of accepting a $1.25 million recovery now on behalf of the

2  class, and a separate $250,000 individual recovery for Maritime. It presents an immediate and

3  sizable benefit to class members and Lead Plaintiff. Accordingly, Lead Plaintiff respectfully

4  requests this Court to approve the Settlement, the Notice, and the Plan of Allocation as fair,

5  reasonable and adequate; certify the Class; enter Final Judgment in the form attached as

6  Exhibit A hereto; and approve payment of Lead Counsel's fees and expenses in the form

7  attached as Exhibit B hereto.

8  DATED: August 12, 2014                    **PUNZALAN LAW, P.C.**

9                                            By: /s/ *Mark Punzalan*
10                                               Mark Punzalan

11                                           600 Allerton St., Suite 201
                                             Redwood City, CA 94063
12                                           Tel: (650) 362-4150
                                             Fax: (650) 362-4151
13                                           Email: markp@punzalanlaw.com

14
                                             Nicholas I. Porritt
15                                           **LEVI & KORSINSKY LLP**
                                             1101 30th Street NW, Suite 115
16                                           Washington, DC 20007
                                             Tel: (202) 524-4290
17                                           Fax: (202) 337-1567

18
                                             *Attorneys for Maritime Asset Management,*
19                                           *LLC and Lead Counsel for the Settlement*
                                             *Class*
20

21

22

23

24

25

26

27

28
                                    18
                     MOTION & MPA ISO FINAL APPROVAL
                        Case No. 4:12-cv-05034-YGR